IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY JONES and JOSEPH AFFORD, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.:1:06-cv-585-WHA |
| ) | |
| HOUSTON COUNTY SHERRIFF'S ) | |
| DEPARTMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS RESPONSE TO DEFENDANT SHERIFF LAMAR GLOVER AND HOUSTON COUNTY DEPUTY SHERIFF'S DEPARTMENT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Plaintiffs, by and through the undersigned counsel of record, and hereby submits their response to, Document 25, Defendant Sheriff Lamar Glover and Houston County Sheriff's Department's Motion to Dismiss or in the Alternative Motion for Summary Judgment, and in support thereof, would show unto this Honorable Court as follows:

### STANDARD OF REVIEW

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. "

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court in *Wright v. Newsome*, 795 F. 2d 964, 967 (11th Cir. 1986) stated "we may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief." "The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party."

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In this case the Plaintiff's are due to be viewed in a light most favorable to them.

Further, Defendants' Document 25 Motion should not be treated as a Motion to Dismiss because Defendant attached Affidavit's to the Motion, and pursuant to Rule 12 (b) Fed.R.Civ.P. the attachment of the Affidavit treats the Motion to Dismiss as a Motion for Summary Judgment. Therefore, Defendants' Document 25 should be viewed as a Motion for Summary Judgment where application of review pursuant to Rule 56, Fed.R.Civ.P should apply.

### DISMISSAL OF HOUSTON COUNTY SHERIFF'S DEPARTMENT

Plaintiffs concur in the case precedent that Defendant Houston County Sheriff's Department is not a legal entity by virtue of statute and therefore make no objection to the dismissal of Defendant Houston County Sheriff's Department.

### STATEMENT OF DISPUTED FACTS AS TO DEFENDANT GLOVER

Plaintiffs respectfully, yet vehemently, disagree that Defendant Sheriff Lamar Glover is entitled to dismissal or Summary Judgment as a matter of law. Defendant Glover states in his Affidavit, attachment to Document 25-1, that he was "not personally or directly involved in the obtaining of or in the on-site execution of the search warrant made the basis of Plaintiffs' Complaint". While this statement may be made in good faith and appear true and correct on its face, Plaintiffs disagree. Plaintiffs submitted with their Complaint in the above styled cause of action a copy of the "warrant".(please see "Plaintiffs' Exhibit 1" at Document 1-1). Plaintiffs point out again that Defendant Glover clearly had personal knowledge of the warrant and the execution of same inasmuch as the warrant, an order issued by the Houston County Circuit Judge, Hon. Judge Larry K.

Anderson, is directed to Defendant Sheriff Lamar Glover, and further, commanding Defendant Sheriff Lamar Glover to make an immediate search or otherwise execution of the warrant. The warrant does not command any other person to execute the search, it is not addressed to any other person, and in fact conveys "authority" only to the "THE SHERIFF OF SAID COUNTY". The proscribed or suggested format and language of a warrant is set forth at §15-5-6, Code of Alabama, 1975 which states in pertinent part, "A search warrant may be substantially in the following form:". In the event that Defendant Sheriff Lamar Glover had no desire to be involved, directly or otherwise, with obtaining and executing warrants in his respective county then he should have so directed his officers, deputies, investigators, and or agents to seek warrants which would extend authority to execute to "any deputy sheriff". This simply is not the case at bar. Defendant Glover was commanded by the warrant to execute the same. Further, §36-22-3(1), Code of Alabama, 1975 states as follows;

> "It shall be the duty of the sheriff: (1) To execute and return the process and orders of the courts of record of this state and of officers of competent authority with due diligence when delivered to him for that purpose, according to law."

Granted, the undersigned counsel is well aware of the "alter ego" function sheriffs enjoy of their deputies. However, for purposes of execution of the search warrant, Defendant Glover was expressly the only person or entity ordered, commanded, and authorized to execute the search warrant. Defendant Glover may have delegated his authority to his deputies, investigators, or other agents of his choice. It is this delegation of the Sheriff's authority which gives rise to the liability of Defendant Sheriff Lamar Glover. Defendant Glover must have had knowledge of the search warrant and he must have given some

direction or delegation as to the execution of the search warrant. If Defendant Glover had no involvement or knowledge, directly or indirectly, then the warrant directed to Defendant Glover commanding him to execute the same would thus render the search an unauthorized search of Plaintiffs' premises thereby making the facts and allegations of Plaintiffs' Complaint sufficient for a jury to find in favor of Plaintiffs. Defendant Sheriff Glover in his Motion to Dismiss or in the Alternative Motion for Summary Judgment does not state he did not delegate the authority conferred upon him by the warrant, therefore he must have had knowledge of the warrant and he must have delegated his authority personally or by the "alter ego" principle to his deputies. In such event Defendant Sheriff Glover directed his "alter egos" to execute the search of Plaintiffs' premises, albeit the result of which was the use of excessive force against these Plaintiffs by Defendant Sheriff Glover's alter –egos.

    Plaintiffs Complaint pleads specifically those facts, averments, and or allegations as to the various Counts as against these Defendants and with such specificity so as to outweigh any tendentiously truncated contention of Defendants that Plaintiffs have filed merely a "quintessential" complaint. Plaintiffs specifically stated in their Complaint the acts and or omissions of the Defendants, moreover, Plaintiffs' further support their allegations and averments herein by Affidavit. (Please see Plaintiffs' Exhibit 3 & 4, Affidavits of Mary Jones and Joseph Alford, attached hereto). Defendant's Statement of Facts in Document 25 is nothing further than the typical self serving denial of responsibility and or liability. Defendant makes no claim regarding the Houston County Sheriff's Department in their Statement of Facts, and Plaintiff disagrees with Defendant inasmuch as Defendant Sheriff Glover *was* personally or directly involved in the

execution of the search warrant and training and supervision of his alter-egos which is directly an causally related to the egregious events that are made the basis of this suit. Plaintiff also disagrees that Defendant Sheriff Glover was not charged with the duty of training his deputies to obtain and execute search warrants. It is that duty of training and supervision of deputies and the delegation of Defendant Sheriff Lamar Glover's authority to his alter egos to execute the search warrant which makes Plaintiffs' allegations and averments in their Complaint true and correct as to the irreparable harm caused by Defendant Sheriff Lamar Glover. Additionally, the deputies that acted and or omitted to act were one and same as Defendant Sheriff Lamar Glover because the acts of a deputy are legally perceived as though the Sheriff had performed those acts personally. Therefore, any and all acts or omissions that are claimed are also claimed against Defendant Sheriff Lamar Glover and are contrary to his averments in his Affidavit, he was personally and directly involved by his proxy that were legally him.

## STATE AND FEDERAL LAW CLAIMS ASSERTED BY PLAINTIFFS, SHERIFFS DO NOT HAVE ABSOLUTE IMMUNITY AND ARE NOT AFFORDED THE ABILITY TO HIDE BEHIND THE CLOAK OF IMMUNITY

The basis of Defendants argument is that Defendant Sheriff Glover is a state officer and is therefore entitled to absolute immunity from any and all actions. Plaintiff disagrees. Defendant Sheriff Glover fails to point out that there are five (5) exceptions to sovereign immunity provided to Sheriffs and deputies. These five exceptions are:

> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, **(4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law,** or (5) to seek construction of a statute under the Declaratory Judgment Act if his is a necessary party for the construction of a statute.

*Armstrong v. Carter*, 1998 U.S. Dis. Lexis 3062 (S.D. Ala. 1998); *citing Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987). The Alabama Supreme Court in *Phillips v. Thomas*, 555 So. 2d 81 (Ala. 1989) has held that a state officer or employee, such as Sheriffs and Deputies, may not escape individual tort liability by "arguing that his mere status as a state official cloaks him with the state's constitutional immunity." *Id.* at 84; *see also, Barnes v. Dale*, 530 So. 2d 770, 781 (Ala. 1988).

Further, although Defendants claim that Article I §14 of the Alabama Constitution the Alabama provide an additional immunity, courts have clearly held that "a state officer or employee is not protected by §14 when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under mistaken interpretation of the law." *Lumpkin v. Cofield*, 536 So. 2d 62, 65 (Ala. 1988); *DeStafney v. University of Alabama*, 413 So. 2d 391, 393 (Ala. 1981); *Gill v. Sewell*, 356 So. 2d 1196, 1198 (Ala. 1978). Defendant is correct in that Rule 17(b) of the Fed. Rules of Civ. Procedure gives the guidance that the state laws in which the district court sits should govern. Plaintiffs agree and further allege as in their complaint that there was willful, malicious, illegal, fraudulent, bad faith, beyond authority, mistaken interpretation of the absolute immunity law, and/or other acts or omissions that Defendants committed.

Government officials "performing discretionary functions are shielded from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir. 1990). Qualified immunity protects "all but the plainly incompetent or those who

knowingly violate the law." *Toth v. City of Dothan*, 953 F. Supp. 1502, 1507 (M.D. Ala. 1996) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

> The qualified immunity analysis consists of two separate components: first, the government official must establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred, and second, the plaintiff must demonstrate that the official's actions violated clearly established rights. *Sims v. Metropolitan Dade County*, 972 F. 2d 1230, 1236 (11th Cir. 1992). The term "discretionary authority" includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F. 2d 1558, 1564 (11th Cir. 1988).

*D.R. v. Phyfer*, 906 F.Supp. 637,641 (M.D. Ala. 1995). In order for the Plaintiffs to prevail, "[the Plaintiffs] must show that defendants violated [their] clearly established federal rights." *Hansen v. Soldenwagner*, 19 F. 3d 573 (11 Cir. 1994).

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law.

*D.R. v. Phyfer*, 906 F.Supp. 637,641 (M.D. Ala. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In *Summers*, the Plaintiff was leaving his house when a Detroit police officer entered onto his property armed with a narcotics search warrant. The officer requested that Summers assist in re-entering the home and remain while the officers searched the home. After the officers found narcotics in the home, they arrested Summers and subsequently found heroin on his person. It is unclear from the reading of this case if Summers was ordered by the officer to be handcuffed during the search. The Supreme Court found that this detention "constituted a seizure within the meaning of the Fourth Amendment." *Michigan v. Summers*, 452 U.S. 692, 696 (1981).

The Supreme Court in *Summers* held that "for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the ***limited authority*** to detain the occupants of the premises while a proper search is conducted. [emphasis added] *Summers* at 705. The question remains what is "limited authority." The Plaintiffs aver that Defendant exceeded "limited authority" and violated their Constitutional rights when the home of the Plaintiffs was entered in the night hours without notice to the Plaintiffs that they were law enforcement officers, additionally Plaintiffs are an elderly African American couple who were asleep in their bed and were awakened by yelling from the officers and awoke to find laser lights from guns being pointed at their heads. Plaintiffs repeatedly asked who the hooded persons were but were merely answered with racially charged responses and telling Plaintiffs to shut up and do as they were told. No one informed Plaintiffs at that time they were executing a warrant. (Please see attached Affidavit of Plaintiff Jones and Plaintiff Afford, hereinafter referred to as Plaintiff's exhibit 1 and Plaintiff's exhibit 2 respectively) Additionally, the home of Plaintiffs was "trashed" with broken doors and a vehicle was damaged because no opportunity was given to open the locked vehicle even though Plaintiffs offered to provide the key to open the car. The Sheriffs finally informed Plaintiffs that they were looking for a person named "Josh". Plaintiffs informed the Sheriffs that they knew of no one named Josh, nor did any person named Josh reside in their residence, nor did any person named Josh ever reside in their residence. To date, Plaintiffs are still baffled as to whom this phantom "Josh" is.

The theory behind *Summers* giving Officers the right to detain the occupant was to

(1) prevent flight in the event that incriminatory evidence is found, (2) minimize the risk of harm to the officials, and (3) facilitating the orderly completion of the search, inasmuch as the detained occupant may, out of self-interest, open locked doors or locked containers.

*Summers* at 1405. The alleged effectuation of the search warrant went beyond authority, and in total contradiction to the Fourth Amendment Constitutional rights afforded the Plaintiffs as enumerated in *Summers* and *Connor* by unlawfully detaining Plaintiffs in their bed at gun point and screaming racially charged language at Plaintiffs while wearing hooded clothing and not affording Plaintiffs the knowledge as to who was in their home holding them at gun point. Additionally, Plaintiffs were not given the opportunity, even upon request, to facilitate an orderly completion of the "search" and had their property unnecessarily, willfully, and maliciously in bad faith damaged and their locked doors were damaged throughout the premises inside and out, in addition to other damages and harm caused to Plaintiffs.

Defendant Sheriff Glover, by and through, the order of the Circuit Court that the "sheriff" was "commanded" to enter the home and outbuilding of Plaintiff's property acted in a discretionary manner to forego the Circuit Court's command and delegate his duties to his alter-ego's, the deputies of the sheriff. "The acts of the deputy sheriff are the acts of the sheriff. The deputy sheriff is the alter ego of the sheriff." Mosely v. Kennedy, 245 Ala. 448, 17 So.2d 536; Rogers v. Carroll, 111 Ala. 610, 20 So. 602; Hereford v. Brentz, 192 Ala. 465, 68 So. 350; National Surety Co. v. Boone, 227 Ala. 599, 151 So. 447. **"In legal contemplation, he [deputy sheriffs] and the sheriff are one and the same officer."** (emphasis added) Mosely v. Kennedy, 245 Ala. 448, 17 So.2d 536; Rogers v. Carroll,111 Ala. 610, 20 So. 602; Hereford v. Brentz, 192 Ala. 465, 68 So. 350;

Nat. Surety Co. v. Boone, 227 Ala. 599, 151 So. 447; Giles v. Parker, 230 Ala. 119, 159 So. 826. Defendant Sheriff Lamar Glover denies involvement, by and through his delegation of a Circuit Judges command to him personally, he sent his alter-ego's and he is one and the same person as the deputies. Defendant Sheriff Glover delegated his responsibilities and duties to his alter-egos, acting as a legal proxy for Defendant Sheriff Glover, thereby committing the egregious acts complained of by these Plaintiffs. As previously pointed out herein, absolute immunity does not exist where there is bad faith, willful, malicious and egregious conduct to such a degree as that which was performed on Plaintiffs. Hence, once the violation of one of the exceptions to the immunity is committed, then, the immunity is dissolved, does not exist, and can not be enjoyed by anyone of the officers involved, and more importantly in the instant case, can not be enjoyed by Defendant Sheriff Glover.

> The qualified immunity analysis consists of two separate components: first, the government official must establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred, and second, the plaintiff must demonstrate that the official's actions violated clearly established rights. *Sims v. Metropolitan Dade County*, 972 F. 2d 1230, 1236 (11th Cir. 1992). The term "discretionary authority" includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F. 2d 1558, 1564 (11th Cir. 1988).

*D.R. v. Phyfer*, 906 F.Supp. 637,641 (M.D. Ala. 1995). Further, Defendant Sheriff Glover's actions and or omissions do not allow Defendant to enjoy the qualified immunity either. The plaintiff must demonstrate that the official's actions violated clearly established rights. However, if this court finds that the Defendant has not violated clearly established law as cited above in *Summers* and *Connor*, the Plaintiffs assert that they can

"overcome qualified immunity [] by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Smith v. Mattox*, 127 F. 3d 1416, 1420 (11th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The failure to identify a factually similar case is not determinative on the issue of qualified immunity. *Priester v. City of Riviera Beach*, 208 F. 3d 919 (11th Cir. 2000). Thus the question that remains is whether, absent a controlling factually on-point case, Plaintiffs who presented no apparent risk of flight or injury to the officers because they were asleep in their beds and repeatedly and unsuccessfully inquired as to who the hooded persons were that were holding them at gunpoint, so obviously impacts the very core of the Fourth Amendment that the unlawfulness of the conduct should have been readily apparent.

    The Defendants present a two prong test of whether or not there is a Constitutional violation, and if so were the officials on notice. The answer to both is yes. As the preceding paragraphs outline, there are Constitutional violations and the conduct was so egregious that the unlawfulness of the conduct should have been readily apparent. The "bright line" test that Defendants refer to in their Motion, hopefully is not in any training manual in the State of Alabama that it is lawful, good faith, conduct to enter the home of an elderly black couple in the middle of the night and while wearing hoods so as to protect, or as it appears in this case, to hide the identity of the officers, and hold Plaintiffs at gunpoint in their bed while screaming racially charged language including but not limited to the use of the word "NIGGER" at them and omitting and or refusing to tell them even after numerous inquiries that there is a search warrant and that law

enforcement is in their home. Plaintiffs would hope that behavior of that caliber would not be found in any lawful training source. This conduct is clearly in bad faith, willful, malicious, and should not be tolerated in any civilized society.

Defendant admits that he was acting within his discretionary functions, therefore Plaintiffs agree that Defendant Sheriff Glover's acts in his decisions concerning law enforcement were discretionary functions. The fact that Defendant Sheriff Glover concedes his duties were discretionary furthers Plaintiff's averments that the acts and or omissions are not within any scope of immunity since the complained of egregious acts and or admissions are derived from the deputies acting one and the same as though they were Defendant Sheriff Glover.

## **PLAINTIFFS 42 *U.S.C.*§ 1983 CLAIM ARE VALID**

Plaintiffs have presented facts that the Constitutional violation(s) are valid where egregious, willful, malicious acts conducted in bad faith by Defendant Sheriff Glover and his alter-ego(s) violated Plaintiff's Constitutional rights. Pursuant to 42 *U.S.C.* § 1983, Plaintiffs agree that the two part test is: (1)whether the conduct complained of was committed by a person acting under the color of state law and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States as found in *Parratt v. Taylor,* 451 U.S. 527(1981) and disagrees with Defendant inasmuch as Plaintiffs' Complaint and Affidavits clearly enumerate these items. Additionally, Defendants acts and or omissions clearly violate any standard of a reasonable standard, let alone that of a Sheriff. Defendant argues that Sheriffs are not "persons" and therefore Plaintiff's claim should be denied. It is well established caselaw

in Alabama that a "deputy is an employee but is also an officer or a **person**". (emphasis added) Mosely v. Kennedy, 245 Ala. 448; quoting (Andrews v. State, 78 Ala. 483).

### CONCLUSION

Plaintiff has shown that Defendant and his deputies are one and the same person according to case law. Defendant can not hide behind the shield and cloak of immunity when no immunity is entitled for the egregious acts or omission of acts that were committed on Plaintiffs. Defendant Sheriff Glover continuously refers to immunity as though it were an absolute immunity barring any exception. The only substantial issue that Defendant Sheriff Glover attempts to raise in his Motion to Dismiss or in the alternative Motion for Summary Judgment is that regardless of how egregious the acts and or omission of acts that were committed upon Plaintiffs that Defendant Sheriff Glover has absolute immunity, which is invalid as shown by the above case law. The averments of Plaintiffs are supported by affidavits attached hereto and clearly show that Plaintiffs can prove a set of facts sufficient that a jury could find in their favor. Plaintiffs have demonstrated herein that the immunity arguments of Defendant Sheriff Glover are without merit inasmuch as the conduct complained of rises to the level of meeting the requirements of the exceptions which deny immunity. Plaintiffs have pled with specificity those acts and or omissions in their Complaint and in their Affidavits. The Defendant's Motion to Dismiss should be DENIED, further the alternative pleading of Motion for Summary Judgment is due to be DENIED.

**WHEREFORE, PREMISES CONSIDERED** the Plaintiffs pray that this Honorable Court DENY Defendant's Motion to Dismiss or in the alternative Motion for Summary Judgment based upon the foregoing argument and caselaw. Further, Plaintiffs

have identified another Defendant in this cause of action and will be moving this Honorable Court to join said defendant.

**RESPECTFULLY SUBMITTED** this the 11th day of December, 2006.

| | |
|---|---|
| s/Michael Guy Holton | s/Richard H. Ramsey |
| Michael Guy Holton (HOL106) | Richard H. Ramsey, IV (RAM010) |
| Co-Counsel for Plaintiff | Co-Counsel for Plaintiffs |
| 2779 Old Carter Hill Road | P.O. Box 6595 |
| Pike Road, Alabama 36064 | Dothan, Alabama 36302 |
| (334) 288-2435 | (334) 792-2553 |
| gholtonattorney@direcway.com | RHRamsey@peoplepc.com |

### CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing this the 11th day of December, 2006 by electronically filing same with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the below listed counsel:

| | |
|---|---|
| Gary C. Sherrer, Esq. | Kendrick E. Webb, Esq. |
| Sherrer, Jones, & Terry P.C. | Webb & Eley, P.C. |
| 335 West Main Street | P.O. Box 240909 |
| Dothan, Alabama 36301 | Montgomery, Alabama 36124-0909 |

                                                s/ Michael Guy Holton
                                                OF COUNSEL


Pl's Ex. 3



STATE OF ALABAMA         )
                         )ss
COUNTY OF HOUSTON        )

## AFFIDAVIT

**MARY JONES**, Affiant, who is over the age of 19 years and is a bona fide resident citizen of the State of Alabama and has been more than six months next preceding this statement.

**MARY JONES**, having been first duly sworn deposes and says:

My name is Mary Jones. Everything that I am stating is my own personal knowledge. I presently reside at 481 Harvey Hicks Road, Ashford, Houston County, Alabama. I have resided at this address for over 20 years.

On January 18, 2006, at sometime in the middle of the night, I was awakened by several people who had broken into my home wearing hoods. I was asleep in bed with my husband and I heard the crashing noise of these people breaking into my house which awakened me. Before I could get out of my bed I saw a red light pointing at my head and then realized it was a gun pointed at me and a gun pointed at my husband. I asked who they were and what they wanted and I was told to "shut your God Damn fat black ass damn mouth up and do as you are told, I am tired of this damn nigger, shut the fuck up nigger". I asked again who they were and why they were in my house, I was again told to "shut my fat nigger mouth", and another one said, "handcuff the damn nigger, handcuff her God damn it"and was then pulled by two of these hooded people out of my bedroom. I was so frightened and scared that someone was trying to kill me and my husband and none of the people would tell me who they were and why they were tearing up my house and belongings. I passed out as I was being pulled and dragged down the hall by two of these hooded people and came to when I heard my husband calling out to me. None of the people would tell me who they were. I kept asking what they wanted and why they were tearing up my house and belongings and noone would tell me. I was then told to "shut the hell up nigger or we will shoot you" and I was forced into a small area of my home and was not allowed to get up or out. I could not get up, and there was no way of escape from the confinement that had placed me in. I was scared from the hooded people. I could not identify any of the people because they had on hoods covering their heads. They started telling me to give them my keys, and continued to call me a "nigger".

_/s/ Mary Jones_
MARY JONES

STATE OF ALABAMA      )
HOUSTON COUNTY        )

Personally appeared before me, the undersigned and Notary Public in and for the State of ALABAMA at Large, **MARY JONES**, being by me and first duly sworn, does depose and says that the above affidavit as true and correct.

SUBSCRIBED AND SWORN TO before me this 2nd day of June 2006.

_/s/ Brenda_
Notary Public
My Commission Expires: 9/19/08

π's Ex. 4

STATE OF ALABAMA )
COUNTY OF HOUSTON )

### AFFIDAVIT

**JOSEPH ALFORD**, Affiant, who is over the age of 19 years and is a bona fide resident citizen of the State of Alabama and has been more than six months next preceding this statement.

**JOSEPH ALFORD**, having been first duly sworn deposes and says:

My name is **Joseph Alford**. Everything that I am stating is my own personal knowledge. I presently reside at 481 Harvey Hicks Road, Ashford, Houston County, Alabama. I have resided at this address for over 20 years.

On January 18, 2006, at sometime in the middle of the night, I was awakened by several people who had broken into my home wearing hoods. I was asleep in bed with my wife and the crashing noise of these people breaking into my house awakened me. Before I could get out of my bed I saw a red light pointing at my head and then realized it was a gun pointed at me and a gun pointed at my wife. My wife and I asked "who they were and what they wanted" and I was told to "shut your nigger ass up and do as you are told". I asked again "who they were and why they were in my house", I was told to "shut my nigger mouth". I was so frightened and scared that someone was trying to kill me and my wife and none of the people would tell me who they were and why they were destroying my house. The doors in the interior of the house were not locked, yet they were destroying the doors instead of turning the handles. All of my belongings were ransacked, and this again was done by the hooded people who would not identify themselves. The hooded people told me "nigger do not move". There were numerous people who were wearing hoods. After an extended period of time, I was able to see one Houston County Sheriff's car through the door, and I ask the sheriff what was going on and he told me he was just "observing". I ask what they wanted and none of them would tell me. I was then told by one of the hooded people to "shut the hell up nigger or we will shoot you". We tried to tell them not to break into the cars that were in our yard that we had the keys to open them, they would not listen and broke into a couple of the cars while I was getting the keys to them. I was scared for my life because of the abrupt entrance without any indication who this mob of hooded people were, and the more I asked who they were the more they destroyed my house and my personal belongings.

_Joseph Alford_
**JOSEPH ALFORD**

STATE OF ALABAMA )
____Houston____ COUNTY )

Personally appeared before me, the undersigned and Notary Public in and for the State of ALABAMA at Large, **JOSEPH ALFORD**, being by me and first duly sworn, does depose and says that the above affidavit as true and correct.

SUBSCRIBED AND SWORN TO before me this 2nd day of June 2006.

_____
Notary Public
My Commission Expires: 9/19/08