IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY JONES and JOSEPH ALFORD,    )
                                 )
        Plaintiffs,              )
                                 )
            v.                   )    Civil Action No. 1:06-cv-585-WHA
                                 )
THOMAS FLATHMANN,                )              (WO)
                                 )
                                 )
        Defendant.               )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss or in the Alternative for Summary

Judgment (Doc. # 66), filed by Defendant Thomas Flathmann on December 21, 2007.  Mary

Jones ("Jones") and Joseph Alford ("Alford") (together, "Plaintiffs"), filed an Amended

Complaint on March 18, 2007 (Doc. #40) against Deputy Thomas Flathmann, alleging various

federal constitutional violations under 42 U.S.C. § 1983, as well as state law claims for false

imprisonment, assault and battery, and intentional infliction of emotional distress, arising out of

an entry onto the Plaintiffs' premises on January 18, 2006 pursuant to a search warrant.  After a

protracted dispute concerning service of process, the Defendant filed a Waiver of Service on

November 20, 2007. (Doc. # 58.)  The court entered an order (Doc. # 64) granting an extension

of time until December 24, 2007, for the defendant to file an Answer, but before the answer was

due, the defendant filed the instant Motion to Dismiss, or in the Alternative for Summary

Judgment on December 21, 2007. (Doc. # 66.)  The Plaintiffs filed a response in opposition to

the motion on January 16, 2008.  Although the Defendants were given until January 23, 2008 to file a Reply (Doc. # 68), no reply has been filed.

Because both Plaintiffs and Defendant submitted evidence in the form of affidavits upon which their briefs rely, and because the defendant moved in the alternative for summary judgment, the court will address this motion under the summary judgment standard provided for in Rule 56, and not the motion to dismiss standard. Federal Rule of Civil Procedure 12(d).  For reasons discussed below, the Motion for Summary Judgment is due to be DENIED with respect to Plaintiff's Fourth Amendment claim for excessive force, and GRANTED with respect to all other claims.

## II. <u>STANDARD OF REVIEW</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. FACTS

The court has reviewed the submissions of the parties and the evidence submitted against and in support of their respective positions, and considers the following facts, viewed in a light most favorable to the Plaintiffs:[1]

---

[1] In his Statement of the Facts within his Brief in Support, Defendant Flathmann says that he "was not personally or directly involved in the on-site execution of the search warrant made the basis of Plaintiff's Complaint. See Affidavit of Investigator Thomas Flathmann . . . submitted as Exhibit A with Defendant's Motion to Dismiss or in the Alternative for Summary Judgment." (Doc. #67 at 3.) Deputy Flathmann's affidavit, however, describes in great detail his presence and involvement during the events in question, stating, "I have personal knowledge of the facts and information contained herein. Except as otherwise indicated herein directly or clearly by the context thereof, I have personal knowledge of the information contained herein." (Def.'s Exh A, Doc. # 67-2.) The court suspects that Defendant Flathmann's Statement of the Facts was left unchanged from a previous brief filed on behalf of now-dismissed Sheriff Glover.

Pursuant to Federal Rule of Civil Procedure 56(e)(2), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322. For purposes of

On or about January 18, 2006, certain unidentified, hooded men, later discovered to be deputies of the Houston County Sheriff's Department, while acting under color of authority, *i.e.*, a drugs-related search warrant for the premises, outbuildings, and vehicles, issued by a Circuit Judge of Houston County, forcefully entered the residence of Plaintiffs Mary Jones ("Jones") and Joseph Alford ("Alford") (together, "Plaintiffs"), awakening them in the middle of the night. (Pls.' Exhs. 3 & 4.)  Before they could get out of their bed, the Plaintiffs saw red lights pointed at their heads, and realized it was the lasers from the hooded men's guns.  (*Id.*)  The deputies entered through the side door, and encountered the Plaintiffs in the back bedroom. (Flathmann Aff., Def.'s Exh. A.)  Upon contact with the Plaintiffs, Flathmann states that Alford had a handgun in his hand, and had to be told several times to drop the firearm before he complied. (*Id.*)[2]

When Jones asked who they were and what they wanted, one or more of the hooded men replied, "shut your [expletive] fat black [expletive] [expletive] mouth up and do as you are told, I am tired of this [expletive][racial epithet], shut the [expletive] up, [racial epithet]." (Jones Aff., Pls.' Exh. 3.)  When she repeated the question, she was told to "shut [her] fat [racial epithet] mouth," to which another man added, "handcuff the [expletive][racial epithet], handcuff her [expletive]." (*Id.*)  Alford recalls being told to "shut [his][racial epithet][expletive] up and do as [he was] told" and to "shut [his] [racial epithet] mouth." (Alford Aff., Pls.' Exh. 4.)  Two of the

establishing the facts in this decision, therefore, the court will consider only the affidavits of the Plaintiffs and Defendant, as well as any attached exhibits, and will assume for purposes of determining this motion that Flathmann was one of the hooded men referred to in the Plaintiffs' affidavits.

[2]        This statement was neither denied nor addressed by the Plaintiffs' evidence or brief, and therefore may be taken into account for purposes of summary judgment.

"hooded men" then pulled Jones out of the bedroom and dragged her down the hallway towards the kitchen, during which time she passed out until revived by the sound of her husband calling out to her. (Jones Aff., Pls.' Exh. 3.)[3]  The Plaintiffs present discharge instructions from Southeast Alabama Medical Center stating that she was treated for "Hyperventilation Syndrome." (Pls.' Exh. 3.)

As the deputies proceeded to "tear[] up [the Plaintiffs'] house and belongings," the Plaintiffs were forced to remain in the kitchen, "forced into a small area of [their] home and w[ere] not allowed to get up or out." (*Id.*)  Plaintiff Jones was very frightened of the men, whom she "could not identify . . . because they had on hoods covering their heads," as they demanded her keys, and continued to address her with racial epithets. (*Id.*).  Although the doors to the interior of the house were unlocked, the deputies destroyed the doors instead of turning the handles. (Alford Aff., Pls.' Exh. 4.)  After "an extended period of time," Alford noticed a Houston County Sheriff's car through the door. *Id.*  He asked the sheriff what was going on and he told Alford he was "just observing." *Id.*  He again asked what they wanted and was told, "shut the [expletive] up [racial epithet] or we will shoot you." *Id.*  Alford and his wife tried to tell the

---

3

        In his affidavit, Deputy Flathmann denies ever addressing the Plaintiffs with expletives or racial epithets, and states that the Plaintiffs were the ones excitedly yelling profanities. (Flathmann Aff., Def's Exh. A, at 4.)  Although the deputies' side arms and tazers were "on ready," Flathmann states that there were no physical struggles, and that he never pointed his tazer towards either Plaintiff. (*Id.*)  Flathmann denies that Jones was ever dragged down the hallway, but states instead that they let her "yell herself out" until she was finally talked out of the bedroom; in fact, Flathmann states, no one was touched until Jones began having chest pains and "appeared to be fainting or falling," at which point the deputies helped her lie down on the floor and called the rescue squad to come provide medical care. (*Id.* at 5.)  Moreover, Flathmann states, they were all wearing baseball caps, not hoods. (*Id.* at 4.)  Because these statements are disputed by the Plaintiffs' version of the facts, however, the court must ignore them for purposes of summary judgment, and take the Plaintiffs' version as true.

deputies not to break into the cars in the yard, because they had keys to open them, but while Alford was locating the keys, they broke into a couple of the cars anyway. *Id.* Alford was "scared for [his] life because of the abrupt entrance without any indication who this mob of hooded people were, and the more [he] asked who they were the more they destroyed [his] house and [his] personal belongings." *Id.*

The warrant was issued on the basis of a confidential informant's report of a recent drug purchase on the premises and on knowledge of previous drug activity there. The search found a burnt marijuana cigarette, and two cans fashioned into smoking devices with burnt cocaine residue on them in a storage building behind the house. (Flathmann Aff.).

## IV. <u>DISCUSSION</u>

### A. <u>Refining the Causes of Action in the Complaint</u>

The Plaintiffs' Amended Complaint alleges several federal claims under 42 U.S.C. §§ 1981 and 1983 based on violations of Plaintiffs' rights under the U.S. Constitution, as well as state law claims against Defendant Flathmann in his individual and official capacities as a deputy sheriff of the Houston County Sheriff's Department. The disorganization, ambiguous nature, and structure of the Complaint and briefs, however, make it difficult for the court to discern what additional claims are being made, or the exact identity and number of the constitutional violations asserted pursuant to § 1983.

The Plaintiffs' Nature of the Case segment cites violations of the "Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States and . . . of the Constitution of Alabama." (Amended Compl. ¶ 1.) In its Causes of Action segment, however, the Plaintiffs list only two sections. The first is entitled "A. Federal Claims: Violation of the Fourth Amendment," followed by a single subheading, "Excessive Force." (*Id.* at 5.) The next section,

"Section B. State Law Claims," lays out the alleged state law violations of false imprisonment, assault and battery, and intentional infliction of emotional distress. (*Id.* at 8-10.)

Rather than abandoning the Fifth, Sixth, and Fourteenth Amendment claims listed in the Nature of the Case, Plaintiffs haphazardly reference those federal constitutional amendments throughout both the federal Fourth Amendment excessive force claim as well as the state law claims as follows.

After beginning to describe the Fourth Amendment excessive force violation on the basis of the "assault, harassing, and battering" of the Plaintiffs, the Complaint states that, as a direct and proximate result of such conduct, the Plaintiffs suffered "grievous bodily harm and severe pain and extreme emotional distress, all of which is in violation of their rights under the laws and the Constitution of the United States and in particular the Fourth and Fourteenth Amendments thereof and 42 U.S.C. § 1981 and 1983."[4] (Amended Compl. ¶ 20.) In paragraph 21, the Plaintiffs describe Defendant Flathmann's conduct as "cruel and unusual punishment [that] deprived the Plaintiffs of their right to due process under . . . the Fourth and Fourteenth

---

[4]

The court notes that § 1983 is "not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Graham v. Connor*, 490 U.S. 386, 383-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir. 1995). Moreover, although § 1981 may contain substantive rights, § 1983 provides the exclusive remedy for violations contained in § 1981. *See generally Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000) (discussing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)); *Webster v. Fulton County*, 283 F.3d 1254, 1256 (11th Cir. 2002). The court therefore interprets this sentence as alleging a § 1983 claim for violation of the Fourth and Fourteenth Amendments. Because § 1981 protects against racial discrimination in the making and enforcing of contracts, however, and not excessive force as alleged in the Complaint, the court finds that summary judgment is due to be GRANTED to the extent that Plaintiffs attempt to assert claims under § 1981 as well. *See* Doc. # 36 at 5 n.1 (same as to now-dismissed defendant Glover).

Amendment," calling the "assault and battery" upon the Plaintiffs "unwarranted, cruel, unjustifiable, and excessive." (*Id.* at ¶ 21.)  In the next paragraph, the Plaintiffs state that "[a]s a further result of the above described acts Defendant Flathmann Plaintiffs [sic] were deprived of rights and immunities provided to them under the Constitution and laws of the United States and the State of Alabama including . . . their rights under the Fourth and Fourteenth Amendments to be secure in their person, to be free from punishment without due process, and to equal protection of the laws of the United States of America." (*Id.* at ¶ 22.)

Paragraph 23 contains another list of rights, still under the Fourth Amendment excessive force claim, where Plaintiffs state that it has been "clearly established" in this Circuit that "it is unconstitutional for law enforcement officers to violate" the following: (a) "the Fourth Amendment right to be secure . . .", as mentioned in the previous paragraph; (b) the Fourth Amendment right against false imprisonment; (c) the "liability under 42 U.S.C. § 1983 . . . if the search warrant is executed in an unreasonable manner." (*Id.* at ¶ 23.)  Included in this list is the following: "(d) Police investigative activities are 'government programs' under the Americans with Disabilities Act, but only when the circumstances surrounding the activity is "secure" and there is no threat to human safety." *Id.* (citing Americans with Disabilities Act of 1990, § 12132; *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), *reversed by Barnes v. Gorman*, 536 U.S. 181, *recalled by, vacated by, remanded by Gorman v. Easley*, 2002 U.S. App. LEXIS 20325 (8th Cir. Sept. 6, 2002); *McCray v. City of Dothan*, 169 F. Supp. 2d 1260 (M.D. Ala. 2001), *aff'd in part and rev'd in part without opinion,* 67 Fed. Appx. 582, 2003 U.S. App. LEXIS 14252 (11th Cir. Ala. 2003)).[5]  Finally, the Plaintiffs further intersperse federal amendments into their state law

5

    The Americans with Disabilities Act of 1990 ("ADA") provides that "no qualified individual with a disability, shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

false imprisonment claim, alleging that they "were deprived of life, liberty, or property without due process of law, and the right to equal protection of the law, secured by the Fifth, Sixth, and Fourteenth Amendment of the Constitution of the United States." (Amended Compl. ¶ 26.)

The Fifth Amendment only applies to acts committed by federal officials, and not those committed by deputy sheriff Flathmann. *See Mercado v. City of Orlando*, 323 F. Supp.2d 1266, 1271 (M.D. Fla. 2004), *aff'd*, 407 F.3d 1152, 1154 n.1 (11th Cir. 2005); *Riley v. Camp,* 130 F.3d 958, 972 & n.19 (11th Cir. 1997); *Hooper v. City of Montgomery,* 482 F. Supp. 2d 1330, 1335 (M.D. Ala. 2007). The Sixth Amendment is not implicated until adversarial judicial proceedings have been initiated, whereas the conduct in question occurred during execution of a search warrant, before any such process would have begun. *United States v. Gouveia*, 467 U.S. 180, 190 (1984); *United States v. Langley*, 848 F.2d 152, 153 (11th Cir. 1988). Summary judgment, accordingly, is due to be GRANTED to Defendant with regards to any Fifth and Sixth Amendment claims.

Any Fourteenth Amendment substantive due process claim based on excessive force fails because the Supreme Court has held that the Fourth Amendment, not the Fourteenth, should be exclusively used to evaluate pre-arrest excessive force cases. *Graham v. Connor*, 490 U.S. 386,

_____

subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). Aside from characterizing the Plaintiffs as "elderly," without specifying their age or how their age might limit them, the Plaintiffs make no attempt to show that they have a "disability" for purposes of the ADA. *See* 42 U.S.C. § 12132(2); 42 U.S.C. § 12102 (defining "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual"); *see e.g., Branch v. Bridgestone/Firestone, Inc.,* 108 F. Supp. 2d 897 (M.D. Tenn. 2000) (holding that neither employee's age nor length of time he had worked for employer was relevant in determining whether employee was substantially limited in major life activity of working, so as to be "disabled" within meaning of § 12102(2)). The cases cited by the plaintiff, in contrast, dealt with the detention of a deaf individual (*McCray*) and a paraplegic individual (*Gorman*). Because this strange citation, alone, is irrelevant, summary judgment for Defendant Flathmann is due to be GRANTED as to any such claim.

395 (1989) ("Today we . . . hold that *all* claims that law enforcement officers have used

excessive force . . . in the course of an arrest, investigatory stop, or other "seizure" of a free

citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard,

rather than under a "substantive due process" approach."); *see also Albritten v. Dougherty

County,* 973 F. Supp. 1455, 1458-59 (M.D. Ga. 1997) (explaining *Graham*'s division in time

during the course of an arrest as to when the Fourteenth Amendment applies).[6]  Summary

judgment is therefore due to be GRANTED on the Plaintiffs' Fifth and Sixth Amendment claims

and on any claims of excessive force under the Fourteenth Amendment.

    For purposes of clarity, the court notes that Plaintiffs' allegations of "unwarranted, cruel,

unjustifiable, and excessive . . . assault and battery" (Amended Compl. ¶ 21) do not establish

Fourth Amendment claims based on assault and battery independent from the excessive force

claim.[7]  A claimed Fourth Amendment right against assault and battery and a claimed Fourth

---

[6]

    Although Eleventh Circuit precedent holds that *Graham* does not preclude a *non-seizure* Fourteenth Amendment substantive due process claim of excessive force, this exception does not apply to our case, for the Plaintiffs here were "seized" for purposes of the Fourth Amendment. *California v. Hodari D.,* 499 U.S. 621, 627-28 (1991) ("[A] person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (internal quotation marks and citations omitted); *Wilson v. Northcutt*, 987 F.2d 719, 721-22 (11th Cir. 1993). *Compare with County v. Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (holding that Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*") (emphasis in original).  The Plaintiffs here claim that they were held in the kitchen against their will. (Jones Aff.) ("I was forced into a small area of my home and was not allowed to get up or out.").

[7]    Although the plaintiff in *Graham* did originally allege a pendent state law false imprisonment claim, it was not before the Supreme Court at the time of decision. *Graham,* 490 U.S. at 390 n.2.  Nowhere in the opinion does the Supreme Court recognize a Fourth Amendment false imprisonment claim to be treated separate from the excessive force "reasonableness" analysis that it adopts in the opinion.

Amendment right against an unreasonable search and seizure based on excessive force are "distinguishable in terminology only." *Cf. Freeman v. Town of Eatonville*, 225 Fed. Appx. 775, 778 n.3 (11th Cir. Nov. 1, 2006) (unpublished) (treating false arrest and false imprisonment state law claims as one). This court will therefore analyze the totality of Deputy Flathmann's alleged conduct, intruding into the home, using force on the Plaintiffs, and detaining them in the kitchen, under the Fourth Amendment "reasonableness" standard used for excessive force claims by *Graham* and subsequent cases.[8]

Finally, aside from the Fourth Amendment protection against excessive force, claims of "unreasonable search and seizure" pertain mainly to whether the search or seizure was supported by probable cause. *Cf. Jackson v. Sauls,* 206 F.3d 1156, 1170-71 (11th Cir. 2000) (claims that force used in illegal stop or arrest is excessive is subsumed into the illegal stop or arrest claim); *Bashir v. Rockdale County, Ga.,* 445 F.3d 1323, 1331-33 (11th Cir. 2006) (officer with no right to make arrest necessarily has no right to use any degree of force); *Barnette v. City of Phenix City*, 2007 WL 3307213, at *12 (M.D. Ala. 2007) ("A claim of excessive force that was used during an unlawful search or seizure is generally subsumed into the unlawful search and seizure claim as a measure of damages . . . because any amount of force is excessive when there is no legal basis for the search and seizure."). Because the court has not found (and the plaintiff has

---

8    Similarly, to the extent that Plaintiffs attempt to establish a Fourth Amendment claim based on false imprisonment, the Court will consider the deputies' kitchen detention of the Plaintiffs within its determination of whether the totality of the deputies' conduct constituted excessive force under the Fourth Amendment. To the extent that it does present a federal claim, however, summary judgment is due to be GRANTED, for the court does not find "special circumstances" or a particularly "prolonged detention" that would violate the Fourth Amendment outside of the excessive force context. *See Los Angeles Cty., CA v. Rettele*, -- U.S. --, 127 S.Ct. 1989, 1993 (2007) (holding no Fourth Amendment violation when wrong suspects held at gunpoint naked for 15 minutes); *Muehler v. Mena*, 544 U.S. 93, 100 (holding that 2-3 hour handcuff detention was not "unreasonable" under the Fourth Amendment).

not cited) a case that supports a third generalized "unreasonable search and seizure" claim separate from the Fourth Amendment analysis described *infra* in Part B.1, the court declines to create such a claim here. By examining the excessive force claim, the court will consider whether the totality of Flathmann's conduct was "unreasonable," as discussed below.

Having found that summary judgment is due to be granted to the extent that Plaintiffs make claims under § 1981, the Fifth and Sixth Amendments, Fourth Amendment claims for false imprisonment or assault and battery, and the ADA, the remaining claims to be analyzed include the Fourth Amendment excessive force claim, the Fourteenth Amendment due process claim asserted pursuant to § 1983, and the state law claims.

### B. § 1983 Claims against Flathmann in his Official Capacity

Plaintiffs allege that Flathmann, acting in his official capacity as deputy sheriff, violated Plaintiffs' rights to be free from "punishment without due process" and to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures "under the Fourth and Fourteenth Amendments. (Amended Compl. ¶¶ 22-23.) For such violations, they seek "compensatory, actual and punitive damages" as "deemed reasonable by a jury" as well as attorney's fees and costs. (Amended Compl. ¶ 23.)

It is well-settled that Alabama sheriffs are executive officers of the state, and as a result, suits against a sheriff in his or her official capacity are considered suits against the state. *Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987) ("A sheriff is an executive officer of the State of Alabama . . . ."); *see also McMillian v. Monroe County*, 520 U.S. 781, 789 (1997) (holding that, under Alabama law, sheriffs are state officers, and suits against them in their official capacity are suits against the state).[9] Neither Congress nor state legislation has abrogated Alabama's

9
    In their Response, Plaintiffs quote *Hutton v. Strickland*, 919 F.2d 1542 (11th Cir.

Eleventh Amendment immunity from § 1983 suits; any federal suit for damages against a sheriff in his official capacity is, therefore, subject to Eleventh Amendment immunity.  The Eleventh Amendment immunity afforded to Alabama sheriffs "also extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego." *Carr v. Florence*, 916 F.2d 1521, 1527 (11th Cir. 1990).

Because the Eleventh Amendment bars suits against the state in federal court, in the absence of any waiver or consent, this court has no jurisdiction to hear claims for monetary damages against Thomas Flathmann in his official capacity.  Accordingly, with respect to Plaintiffs' § 1983 claims against Thomas Flathmann in his official capacity, the Defendant's Motion for Summary Judgment is due to be GRANTED.

**B. § 1983 Claims against Flathmann in his Individual Capacity**

Although the Eleventh Amendment protects state officers from suits for monetary damages in their *official* capacities, it does not shield state officers from *individual* liability under § 1983 for violations of the United States Constitution and federal law. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Newsome v. Lee County*, 431 F. Supp. 1189, 1195 (11th

---

1990), for the proposition that: "In section 1983 actions . . . sheriffs are county officials as opposed to state officials." (Pls.' Resp. To Def.'s Mot. at 7) (internal quotation marks and citations omitted).  The word substituted by the ellipsis in the Plaintiffs' quote is the word "Florida."  Florida sheriffs may be considered county officials, but Alabama sheriffs are considered state officials. *McMillian v. Monroe County*, 520 U.S. 781 (1997).  Although the court assumes that such misrepresentation is unintended, it notes that a cursory perusal of law school textbooks and classic civil rights treatises (*E.g.*, 70 Am. Jur. 2d *Sheriffs, Police and Constables* § 2, n.13; 13 Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure* § 3524 at 132 nn.25.4, 25.5, 25.7, 25.8; *Id.*, § 3573.1, at 1 n.12; *Id.* § 4511 at 384 n.119.3; John C. Jeffries, Jr. et. al., *Civil Rights Actions: Enforcing the Constitution* 195-96 (2000)), of famous Supreme Court cases regarding qualified immunity (e.g., shepardizing *McMillian* produces over 703 results; shepardizing the headnote alone produces over 66), or even the Defendant's brief to which Plaintiffs were responding (Def.'s Br. at 3-4), would have revealed this well-settled point of law.

Cir. 2006).  To establish liability under § 1983, Plaintiffs must prove that they have been deprived of a federal statutory or constitutional right by someone acting "under color of" state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by, Daniel v. Williams*, 474 U.S. 327 (1986).  These elements have been sufficiently alleged and not opposed by the Defendant.

Defendant Flathmann asserts the defense of qualified immunity.  Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).  To be eligible for qualified immunity, "the official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  The court will presume that Deputy Flathmann, in carrying out his execution of the warrant, was acting within his discretionary authority, since Plaintiffs do not dispute that. *See Barnette*, 2006 U.S. Dist. LEXIS 14783, at *20.

Next, determining whether a public official is eligible for qualified immunity involves a two-step inquiry.  To deprive a public official of qualified immunity, the plaintiff must first show that the officer has violated a constitutional right. Second, assuming adequate proof of a constitutional violation, the plaintiff must show that the constitutional right in question was so clearly established that the officer had "notice" or "fair warning" that his or her conduct was constitutionally prohibited.  In other words, if the Plaintiffs' constitutional rights were violated, qualified immunity applies unless "at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law."

14

*Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004). In this way, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violated the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

### B.1. Fourth Amendment - excessive force

The Fourth Amendment of the United States Constitution protects the right of people to be secure "against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. Even if no arrest is formally made, an official seizure of a person must generally be supported by probable cause. *Dunaway v. New York,* 442 U.S. 200 (1979).

A "warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 706 (1981). A *de minimis* amount of reasonable force does not constitute a violation of constitutional rights if the search is supported by probable cause. *Crosby v. Monroe County,* 394 F.3d 1328, 1335 (11th Cir. 2004) (holding that an officer's foot on the defendant's face, without evidence of physical injury, was not sufficient force to violate Fourth Amendment).

#### i. Probable cause

The Plaintiffs argue that there was no probable cause arising from the "specious" warrant, because it specifically authorized "THE SHERIFF OF SAID COUNTY" and omitted any mention of his deputies. (Pl.'s Resp. At 3-4; Pl. Exh. 1.) Because the sheriff, a former defendant in this suit, testified that he "was not personally or directly involved in the obtaining of or in the on-site execution of the search warrant made the basis of Plaintiff's complaint" nor was he "personally or directly involved in the factual events made the basis of Plaintiffs'

complaint," the Plaintiffs argue that the deputy sheriffs were not authorized to execute the search. (Pls.' Resp. At 4-5). *See* Ala. Code § 15-5-7 (1975) ("A search warrant may be executed by any one of the officers to whom it is directed, but by no other person except in aid of such officer at his request, he being present and acting in its execution.").

The narrow view of § 15-5-7 urged by Plaintiffs is not consistent with state law precedent. *See State v. 2018 Rainbow Drive,* 740 So. 2d 1025, 1030 & n.2 (Ala. 1999); *Cowart v. State*, 488 So. 2d 497, 502 (Ala. Crim. App. 1985) (personally deputized city policemen could execute warrant directed only to county sheriff), *overruled on other grounds by McClendon v. State*, 513 So. 2d 102, 106 (Ala. Crim. App. 1986). Even in the case of civilian assistance under § 15-5-7 in executing search warrants, the officer "need not expressly request the civilian's assistance . . . if a reasonable person would infer from the circumstances that the officer executing the search warrant requested the civilian's assistance." *Drill Parts & Serv. Co. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1286 (Ala. 1993) (internal citations omitted). A sheriff cannot be at all places at once; by acting as the "agent and alter ego" of the sheriff, the sworn deputies act at his behest, operating within the confines of Ala. Code § 15-5-7 (1975). *See Carr v. Florence*, 916 F.3d 1521, 1526 (11th Cir. 1990) ("[An Alabama] deputy is legally an extension of the sheriff . . . [and] . . . [t]he deputy's acts are generally considered the acts of the sheriff . . . ."). Furthermore, Plaintiff Alford states in his affidavit that the sheriff was present. The court therefore finds no defect in the warrant or its execution in terms of probable cause.

### ii. *Excessive force*

Because the execution of the search was supported by probable cause, the court must decide whether the force used was excessive in violation of the Fourth Amendment. The standard for whether the use of force is excessive is one of "objective reasonableness," judged

"from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396; *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007).[10]  In determining whether an officer's use of force was objectively reasonable, the court considers the following factors: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (internal citations and quotation marks omitted); *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986); *Benton v. Hopkins*, 190 Fed. Appx. 856, 859 (11th Cir. July 25, 2006) (unpublished).

For Fourth Amendment purposes, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain occupants while a proper search is conducted." *Michigan v. Summers,* 452 U.S. 692, 705 (1981); *Los Angeles Cty., CA v. Rettele, --* U.S. --, 127 S.Ct. 1989, 1992 (2007).  Inherent in the authorization to detain is the authority to "use reasonable force to effectuate the detention." *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005).  Although an officer is liable against searches and seizures conducted unreasonably, therefore, the Eleventh Circuit has held that "the application of de minimis force,

---

10

      "In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts.  We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Kesinger*, 381 F.3d at 1248-50; *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1279 (11th Cir. 2004)." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).

without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell,* 207 F.3d 1253, 1257 (11th Cir. 2000).

Attempting to approximate the line of demarcation between *de minimis* and excessive in this fact-intensive process, this court looks at several Eleventh Circuit cases finding the use of force to be *de minimis*, and therefore incapable of precluding summary judgment. *See, e.g., Crosby v. Monroe County*, 394 F.3d 1328 (11th Cir.2004) (foot in the face causing no injury); *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000) (grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van, and handcuffed him); *Gold v. City of Miami*, 121 F.3d 1442, 1444 (11th Cir.1997) (handcuffed too tightly and for twenty minutes); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir.1997) (slammed plaintiff against the wall, kicked legs apart and required plaintiff to raise hands above head as officers carried out arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir.1993) (pushed plaintiff against wall while handcuffed), *modified*, 14 F.3d 583 (11th Cir.1994); *see also Lee v. Ferraro*, 284 F.3d 1188, 1199-1200 (11th Cir.2002) (discussing these *de minimis* force cases); *McReynolds v. Ala. Dep't of Youth Servs.*, 204 Fed. Appx. 819, 822 n. 1 (11th Cir. Oct. 30, 2006) (unpublished). For example, the *Nolin* court, discussing the *Jones* case, held that while the use of force may have been unnecessary, "the actual force used and the injury inflicted were both minor in nature. Given such variables, the application of the excessive force standard would not inevitably lead an official in the defendant officer's position to conclude that the force was unlawful." *Nolin*, 207 F.3d at 1256-57.

Other Eleventh Circuit cases, on the other hand, have found that the force used clearly exceeded that which was reasonable under the Fourth Amendment, sometimes, even in the absence of existing caselaw. *See Priester,* 208 F.3d at 926-27 (denying qualified immunity to

officer who allowed police dog to attack arrestee who was already subdued and lying on ground); *Smith*, 127 F.3d at 1418-20 (denying qualified immunity to officer who broke arm of individual who "docilely submitted" to officer's request to "get down"); *Lee v. Ferraro*, 284 F.3d 1188, 1199-1200 (11th Cir. 2002) ("As in *Slicker, Priester,* and *Smith*, the peculiar facts of this case are 'so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point.'"); *see generally Clark v. Johnson,* 2000 U.S. Dist. LEXIS 15347, at *36 n.4 (S.D. Ala. 2000) (comparing various injuries found by differing circuits to be *de minimis* (bruised shoulder from being shoved into a wall; sore bruised ear lasting three days; transitory back and shoulder pain; 1.5 inch scratch on the back of the hand from handcuffs; welt from slap on face, daily headaches from being hit with water bucket, sore and swollen thumb from being hit with keys) with others found to be sufficient to support excessive force claims (cuts, scrapes, contusions to face, head, body from group beating; broken finger; cuts, bruises, swollen hand and possible broken finger; permanent scarring and numbness from handcuffs)).

Were the court to look solely at the injury inflicted to determine whether the force was more than *de minimis*, any meaningful distinction between, for example, a 1.5 inch scratch or a welt (*de minimis*) and other cuts, scrapes or contusions (sufficient) would be nothing more than arbitrary. *See id.* The futility of such an exercise only illuminates the need to consider all of the circumstances involved. Although the extent of injury inflicted is a relevant factor in assessing reasonable force, the idea that a threshold degree of "significant" injury is required for there to be more than *de minimis* injury has been overruled. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).[11]

---

[11]
     Although some of the cases cited above explore *de minimis* force in the Eighth Amendment context, the *de minimis* analysis consists of the same inquiry:

     In the fourth amendment context, any force exerted by a law enforcement officer that

The Fourth Circuit has recognized that, although a *de minimis* injury is usually the sign of *de minimis* force, a claim may be made even if the injury is *de minimis,* in "highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain." *Brooks v. Waters*, 2007 WL 2463285, at *5 (N.D. W. Va. Aug. 28, 2007) (slip op.); *cf. Hudson*, 503 U.S. at 9 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.").  In other words, although some sort of injury must be present, the term "*de minimis* force" refers not solely to the significance or insignificance of the consequent injury, but the nature and extent of the force used under the circumstances, "evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).  Although the significance of the injury may often be a telltale indicator, the circumstances in which the force was used form the entire analysis of whether "application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful." *Post,* 7 F.3d at 1559.

Here, the Plaintiffs allege that they were awakened in their bed, in the middle of the night, by the sound of several "hooded" people, including Flathmann, who had broken into their home, ransacking their belongings, bursting open unlocked doors, and pointing guns with red lights at their heads.  The Plaintiffs further state that, yelling racial epithets the entire time, the

---

would be objectively reasonable under *Graham* [Fourth Amendment] would also be de minimis under *Hudson* [Eighth Amendment].  Similarly, any force that would be objectively unreasonable under *Graham* would not fall within the de minimis language of *Hudson.*  In other words, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment.
*Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996).

hooded people, who would not identify themselves, dragged Plaintiff Jones down the hall, during which time Jones passed out. They were subsequently detained in the kitchen while the rest of the house, storage buildings, and cars, were searched. Instead of waiting for Alford to find the keys, the men broke into several cars in the yard.[12]

Defendant Flathmann argues that the force used is not excessive under the circumstances. The warrant authorized a search of the premises for drugs, which can often warrant a certain degree of force or urgency because of the associated "threat of physical violence" and "reason to believe that evidence would likely be destroyed." *Hudson*, 126 S.Ct. at 2163 (discussing the application of the knock-and-announce rule). The only evidence of any physical injury is the discharge instruction listing treatment for "[h]yperventilation syndrome" and noting that Jones should "[f]ollow up with [her] doctor for continued problems." (Pl.'s Exh. 3.) The execution of the search warrant occurred late at night in the dark, and where the warrant authorized a search for drugs, money, and related paraphernalia, the officers needed to use a certain amount of force to prevent destruction of any evidence and to ensure their own safety. *Summers,* 452 U.S. at 702-03 ("[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."). Finally, the Plaintiffs' affidavits do not dispute Deputy Flathmann's statement in his Affidavit that Alford had a handgun in his hand when contact was made in the back bedroom; this suggests that a certain amount of precaution was necessary.

In response, the Plaintiffs state in their affidavits that, when their questions were met with only racial epithets, Jones "passed out as [she] was being pulled and dragged down the

---

12    The court notes again that Flathmann's version of what happened is totally different, but the motion is analyzed by accepting the plaintiffs' version.

hall." (Jones Aff., Pls.' Exh. 3.)[13]  Jones's affidavit does not squarely address whether the Plaintiffs were actively resisting or whether they would have followed the sheriffs willingly and peacefully to the kitchen, but the inference in their favor would suggest that they passively resisted.  Although Deputy Flathmann states that Alford was in possession of a handgun when the deputies broke into the bedrooom, he also states that Alford eventually complied with the deputies' commands to drop the gun. (Flathmann Aff. at 3, Def.'s Exh. A.)  Further, believing the Plaintiffs' affidavits, they did not hear any announcement of the deputies' presence or identity, but were instead awakened to the sound of men breaking down the door to their home in the middle of the night; it would be neither uncommon nor necessarily inappropriate for one to reach for the protection of a gun in such a circumstance.  If a docile, obedient and yielding subject of a search warrant was indeed dragged through the hallway, as the Plaintiffs state in their affidavits, this may create a question of fact as to whether the force used was excessive under the circumstances. *See, e.g., Priester*, 208 F.3d at 926-27; *Smith*, 127 F.3d at 1418-20; *Ferraro*, 284 F.3d at 1199-1200.

It is not entirely clear whether the constant racial epithets to which the Plaintiffs were subjected should factor into the excessive force calculus at all, when deciding the "reasonableness" of the deputies' search.  If not included in the analysis, even if dragging Jones down the hall was excessive under the Fourth Amendment, such minimal physical force, alone, might be too close to the line and fact-intensive to be clearly established; the court cannot say that such conduct alone was so "clearly unlawful in the situation confronted" that it could only

---

[13]     Deputy Flathmann claims that no one was forcibly removed, but that Jones was "talked out" of the room after she had "yelled herself out." In the context of summary judgment, however, the court must take Jones' version of the facts.

have been committed by "the plainly incompetent or one who is knowingly violating federal law" *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007); *see Mercado v. City of Orlando,* 407 F.3d 1152, 1156 (11th Cir. 2005). The frequency and harshness of the racial epithets, on the other hand, when coupled with the plaintiffs' statements that the men were hooded and would not identify themselves, if included in the "reasonableness" calculus, may be enough to make Deputy Flathmann's alleged conduct clearly unreasonable.

   In *Brown v City of Hialeah*, the Eleventh Circuit discussed a Ninth Circuit case, in which the "district court considered evidence that the officers used offensive language (in this case profanity) along with the other circumstances surrounding the arrest" in considering whether the officers' use of force was objectively reasonable. 30 F.3d 1433, 1436 (11th Cir. 1994) (discussing *Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994)). Although the *Mendoza* court ultimately upheld the district court's decision that the use of the offensive language was not unreasonable and did not amount to force, the *Hialeah* court noted that the Ninth Circuit nevertheless "considered the offensive language in determining whether the officers' use of force was objectively reasonable. *Id.* The *Hialeah* court then acknowledged that "sometimes words spoken while actions are being taken can be useful to one seeking to determine from all the circumstances the reasonableness of the actions," and that "[i]n focusing on the totality of circumstances confronting officials at the time of an arrest, the facts and circumstances surrounding the arrest include the full atmosphere at the time." *Id.* The *Hialeah* court then held that the district court should have allowed testimony that a police officer was yelling racial epithets while urging fellow officers to "kill" the arrestee to go to the jury as they assessed the objective reasonableness of the officers' force. *Id.*

Similarly, the Eleventh Circuit in *Evans v. Stephens*, noted that "from the time Plaintiffs were secured in the patrol car until the end of the search, Stephens used threatening and racist language." 407 F.3d 1272, 1281-82 (11th Cir. 2005). The *Evans* court acknowledged that "such language has an impact on people and counts towards the unreasonableness of the manner of the searches." *Id.* In determining the reasonableness of a brutal strip search, the *Evans* court stated the following: "We do not imply that words alone can make the manner of an otherwise properly conducted search unconstitutional under the Fourth Amendment. But in this case, the totality of the circumstances . . . collectively establish a constitutional violation, especially when the search was being made in the absence of exigent circumstances requiring the kind of immediate action that might make otherwise questionable police conduct, at least arguably, reasonable." *Evans*, 407 F.3d at 1282.

In its qualified immunity analysis, the *Evans* court acknowledged that, there being no clear case law regarding post-arrest strip searches that could square with the situation in question, the defendant was "protected by qualified immunity insofar as the claim is one for conducting a strip search at all." *Id.* at 1283. The court held, however, that "[q]ualified immunity . . . does not shield [defendant] from Plaintiffs' separate claim that the manner of the strip search violated their rights under the Fourth Amendment." *Id.* Although no pre-existing case law established the violation or made it obviously clear, "the text of the Fourth Amendment prohibits 'unreasonable' searches," and despite the fact-specific nature of Fourth Amendment law, "the supposed facts of [the *Evans*] case take the manner of the searches well beyond the 'hazy border' that sometimes separates lawful conduct from unlawful conduct." *Id.*

The incorporation of the constant string of shouted profanity and racial epithets into the "reasonable" calculus of the entire totality of circumstances makes this case a much closer one.

24

Like the *Evans* court, this court does not mean to imply that even the harshest words, alone, are sufficient to defeat qualified immunity. When taken into account along with the deputy sheriffs' crashing into the home at night, in hoods to disguise themselves, the refusal to identify themselves, the alleged dragging of Jones through the hallway, the destruction of unlocked interior doors, and the forced entry into cars to which Alford was locating the keys, the reasonableness of the officers' actions diminishes considerably.[14]

To best reconcile this situation with the line of excessive force cases cited above, the court therefore finds it necessary to return to the aforementioned *Slicker* factors: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (internal citations and quotation marks omitted).

With respect to the first two factors, the Plaintiffs characterize Flathmann's use of force as unprovoked and unnecessary, but although the need for force may have been minimal, the amount of force used on the Plaintiffs - dragging Jones down the hallway - was also minimal when juxtaposed with other cases found to be *de minimis* force. *Compare with Crosby v. Monroe County*, 394 F.3d 1328 (11th Cir.2004) (foot in the face causing no injury); *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000) (grabbed plaintiff and shoved him a few feet against vehicle,

---

[14]       It is possible that the Plaintiffs are asserting a claim for the destruction of property under the Fourth, Fifth, or Fourteenth Amendments. As discussed *infra* in Part D., summary judgment is due to be GRANTED on any Fifth or Fourteenth Amendment claim as inappropriate, and the destruction of the property, as mentioned above, does not alone sufficiently add up to a clearly established Fourth Amendment violation. It is considered, however, as part of the totality of the circumstances.

pushed knee in back and head against van, and handcuffed him); *Gold v. City of Miami*, 121 F.3d 1442, 1444 (11th Cir.1997) (handcuffed too tightly and too long); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir.1997) (slammed plaintiff against the wall, kicked his legs apart and required plaintiff to raise hands above head as officers carried out arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir.1993) (pushed plaintiff against wall while handcuffed), *modified*, 14 F.3d 583 (11th Cir.1994).

The evidence presented as to the extent of physical injury inflicted also seems rather minimal: the hospital discharge papers listed merely "hyperventilation syndrome," without a description of any lasting injury or any necessary medical treatment administered or recommended, other than to follow up with the doctor if symptoms continue. *Cf. Brooks v. Waters*, No. 2:06cv84, 2007 WL 2463285 (N.D. W.Va. Aug. 28, 2007) (slip op.) (holding, with respect to Eighth Amendment claim of excessive force, that although "the plaintiff asserts that he was suffocating . . . plaintiff does not assert any relevant injury, nor has he shown that special circumstances exist which would show that the physical 'punishment' inflicted in this case rises to the level of a constitutional violation even without a showing of injury."); *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002) ("What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time.").

Finally, the refusal to identify, the use of hoods, and the string of profanity and racial epithets attributed to Deputy Flathmann suggest that his actions were unnecessary in executing the search warrant and may have been motivated by malicious intent instead of good faith. Although each of these aspects of Flathmann's search, taken alone, may not be sufficient to amount to behavior sufficiently unreasonable to defeat qualified immunity, the court must

26

"focus[] on the totality of circumstances confronting officials at the time . . . [and] the facts and circumstances surrounding the arrest include the full atmosphere at the time." *Hialeah*, 30 F.3d at 1436; *see also Evans*, 407 F.3d at 1281 ("We do not imply that words alone can make the manner of an otherwise properly conducted search unconstitutional under the Fourth Amendment . . . [b]ut in this case, the totality of the circumstances . . . collectively establish a constitutional violation.").

Here, the plaintiffs present evidence through their affidavit that they were awakened in the middle of the night, without warning, by hooded men including Flathmann, crashing into their home with laser equipped firearms pointed at their heads. They further present evidence that these hooded men refused to identify themselves, responding only with shouted racial epithets and profanity.  After Alford complied with the hooded men's demands to drop his firearm, they unnecessarily seized Jones and dragged her down the hallway, causing Jones physical injury in the form of an episode of hyperventilation.  The relative insignificance of the physical force used to drag Jones down the hallway or of the lasting injury to Jones notwithstanding, "[q]ualified immunity . . . does not shield [Flathmann] from Plaintiffs' separate claim that the manner of the . . . search violated their rights under the Fourth Amendment." *Evans*, 407 F.3d at 1282.  The Plaintiffs also contend that Flathmann's actions caused them further damages in the form of emotional distress and property damage.  Given the totality of these specific circumstances as alleged by the Plaintiffs, even in the absence of specific factual precedent, any "objectively reasonable police officer would have realized" that to disguise himself with a hood, to burst open Plaintiffs' bedroom door with no announcement or warning while pointing a pistol's laser beam at their heads, all the while screaming racial epithets and profanity without once identifying himself as a police officer or announcing that this was the

execution of a search warrant "violated already clearly established federal law." *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004); *Lee v. Ferraro*, 284 F.3d 1188, 1199-1200 (11th Cir. 2002) ("[T]he peculiar facts of this case are 'so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point.")

Absent the protection of qualified immunity, the Plaintiff's create a genuine issue of material fact as to whether the manner of Deputy Flathmann's search violated the Plaintiffs' Fourth Amendment right to be free from "unreasonable searches and seizures." U.S. Const. Amend. IV. *See Holland ex. rel. Overdorff v. Harrington,* 268 F.3d 1179, 1193-95 (10th Cir. 2001) (affirming denial of summary judgment, even with negligible injury, with respect to police officers' harsh language, use of hoods and combat fatigues, and pointing of laser-sighted weapons at children in executing a search and arrest warrant); *Warren v. Williams*, No. 304CV537-JCH, 2006 WL 860998, at *33 (D. Conn. March 31, 2006) ("If the plaintiff's versions of events are credited, the display of firearms, the use of profanity, and the presence of police dogs in the clubhouse . . . could be found by a jury to have been excessive."). Accordingly, Flathmann's motion for summary judgment with respect to Plaintiff's Fourth Amendment excessive force claim is DENIED.

## C. Fourteenth Amendment - equal protection and substantive due process

The Plaintiffs also argue that Deputy Flathmann violated their Fourteenth Amendment rights to equal protection and substantive due process. To prove an equal protection claim, however, the Plaintiffs must present evidence of disparate treatment towards similarly situated persons, *Thigpen v. Bibb County Sheriff's Dep't.,* 223 F.3d 1231, 1237 (11th Cir. 2000), and that Flathmann's actions were motivated by race. Although racial comments such as those allegedly

made by Deputy Flathmann could form the basis for an equal protection claim, *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989), *overruled on other grounds by Hudson v. McMillian*, 503 U.S. 1 (1992), the Plaintiffs have presented no evidence of how other similarly situated persons subject to searches and seizures by the Houston County Sheriff's Department were treated, and summary judgment is therefore due to be GRANTED to the Defendant on the Plaintiff's Fourteenth Amendment equal protection claims.  To the extent that Plaintiffs reference the Fourteenth Amendment within their excessive force claim, this court noted above that excessive force claims are properly analyzed under the Fourth, and not Fourteenth Amendment, and therefore summary judgment is also due to be GRANTED with respect to any substantive due process claim. See *supra* Part IV.A, (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)).

### D. Destruction of Property - Fourth, Fifth, Fourteenth Amendments

With respect to the destruction of the Plaintiffs' doors and cars, the Plaintiffs may be attempting to make a Fourth, Fifth, or Fourteenth Amendment claim.  In any of the three cases, summary judgment is due to be GRANTED to the defendant.  Although the "Just Compensation" clause of the Fifth Amendment does apply to the States, courts have been very reluctant to find that damage inflicted upon a home during the course of a search amounts to a "taking" under the Fifth Amendment, finding such seizure of property to be an exercise of police, not eminent domain, power. *Barnette*, 2006 U.S. Dist. LEXIS 14783, at *13-*15 (M.D. Ala. 2006) (citing cases from the Third and Tenth Circuits).  Destruction of property within the course of a search has also been found to be more appropriate for Fourth, and not Fourteenth, Amendment analysis. *United States v. Ramirez*, 523 U.S. 65, 70-71 (1998).  Finally, to the extent that the Plaintiffs allege a Fourth Amendment claim for destruction of their property, such a

claim is included in and subsumed by the Fourth Amendment excessive force claim based on the totality of Deputy Flathmann's conduct, and therefore duplicative.

### E. State law claims

Finally, the Plaintiffs have alleged state law claims of false imprisonment, assault and battery, and intentional infliction of emotional distress. The defendant claims absolute state immunity to such claims, by virtue of his position as a state officer.

The court agrees that Deputy Flathmann is entitled to such immunity against the state law claims. "Under Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state." *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); Ala. Const. of 1901, art. I, § 14. Although the labels have changed over time, "[t]he immunity available to the State in an action against the States is now referred to as 'State immunity,' [whereas] [t]he immunity available to individual defendants sued for actions taken on behalf of the State is now referred to as 'State-agent immunity.'" *Ex parte Haralson*, 853 So.2d 928, 931 (Ala. 2003). Alabama state-agent immunity protects sheriffs acting in their official and individual capacities. Ala. Const. of 1901, art. I, §14; *Tinney v. Shores*, 77 F.3d 378, 383 & n.3 (11th Cir. 1996) (*quoting Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989); *Gill v. Sewell,* 356 So.2d 1196, 1198 (Ala. 1978).

The Plaintiffs correctly list the exceptions to State-agent immunity. *Ex parte Ala. DOT,* --So.2d --, 2007 Ala. LEXIS 137 (July 20, 2007); *Ex parte Haralson*, 853 So. 2d at 932. Those exceptions, however, refer to requests for *injunctive relief*, whereas the Plaintiffs here seek only monetary damages. Flathmann is therefore immune, in both his official and individual capacities, to any state law claims. See *Tinney*, 77 F.3d at 380, 383; *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1260-61 (11th Cir. 2007).

**V. CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that:

    1.  Defendant Flathmann's Motion for Summary Judgment with regard to Plaintiffs'

Fourth Amendment claims for unreasonable search and seizure is DENIED.

    2.  Defendant Flathmann's Motion for Summary Judgment with regard to all of

Plaintiffs' other claims is GRANTED.

    3. This case will proceed on plaintiffs' Fourth Amendment claims.

Done this 1st day of April, 2008.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE